**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PST Innovations, LLC | ) | |
| | ) | Case No. 21-cv-1239 |
| v. | ) | |
| | ) | Judge: Hon. |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | Magistrate: Hon. |
| Hon. IDENTIFIED ON SCHEDULE A | ) | |
| | ) | |

**COMPLAINT**

Plaintiff PST Innovations ("PST"), hereby files this Complaint for, *inter alia*, trademark

infringement, counterfeiting, and related claims against Defendants, on personal knowledge as to

Plaintiff's own activities and on information and belief as to the activities of others:

**The Parties**

1. PST Innovations, LLC is a Minnesota Limited Liability Company that maintains its

principal place of business at 6439 Fox Rd., Lino Lakes, Minnesota, 55014.

2. Defendants identified on Schedule "A" are all believed to be individuals and

unincorporated business associations who, upon information and belief, reside in foreign

jurisdictions. The true names, identities, and addresses of Defendants are currently unknown.

3. Defendants conduct their illegal operations through fully interactive commercial

websites hosted on various e-commerce sites, such as Amazon, eBay, Wish, DHGate, Alibaba,

AliExpress, etc. ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets

consumers in the United States, including the State of Illinois, and has offered to sell and, on

information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's

intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4. Through their operation of the Infringing Webstores, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Counterfeit Products as alleged, oftentimes as partners, co-conspirators, and/or suppliers. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. The identities of these Defendants are presently unknown. If their identities become known, Plaintiff will promptly amend this Complaint to identify them.

**Jurisdiction and Venue**

5. This is an action for trademark counterfeiting and trademark infringement and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction,

pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's

claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

7. This Court has personal jurisdiction over Defendants in that they transact business in

the State of Illinois and in the Northern District of Illinois.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants

are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in

this District because a substantial part of the events or omissions giving rise to the claims

occurred in this District and Defendants directly target business activities towards consumers in

the State of Illinois.

## Background Facts

9. Plaintiff is engaged in the business of manufacturing, distributing, and retailing high

quality sewing equipment, such as the ONE SECOND NEEDLE sewing needles, a uniquely

designed needle that allows the user to quickly and easily thread a needle, including within the

Northern District of Illinois District (collectively, the "Plaintiff Products") under the federally

registered trademarks identified in Paragraph 10, below. Defendants' sales of Counterfeit

Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

10. Plaintiff is the owner of all rights, title, and interest in and to, *inter alia*, ONE

SECOND NEEDLE, SPIRAL EYE, and THE NEEDLE LADY (U.S. Reg. Nos. 6247443,

3670314, and 5571656) (the "Mark(s)"). The registrations are valid, subsisting, unrevoked,

uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Marks

constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the Marks

pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark

registration certificate for the Marks are attached as Exhibit 1.

11. Plaintiff's brand, symbolized by the Marks, is a recognized symbol of high-quality sewing needles. As detailed below, Plaintiff has been using the ONE SECOND NEEDLE Mark in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

12. The Marks have been widely promoted throughout the United States. Consumers, potential consumers, and other members of the public not only associate Plaintiff's products with exceptional materials, style, and workmanship, but also recognize the Plaintiff's products sold in the United States originate exclusively with Plaintiff.

13. As of the date of this filing, Plaintiff's products are sold online and in retail establishments throughout the world.

14. Plaintiff maintains quality control standards for all ONE SECOND NEEDLE and SPIRAL EYE Products. Genuine ONE SECOND NEEDLE and SPIRAL EYE Plaintiff Products are distributed through a network of distributors and retailers, as well as Plaintiff's online sales, via webstores such as Amazon.com. Sales of ONE SECOND NEEDLE AND SPIRAL EYE Products via the web and legitimate webstores represent a significant portion of Plaintiff's business. The website features proprietary content, images, and designs exclusive to Plaintiff.

15. The ONE SECOND NEEDLE AND SPIRAL EYE Marks are highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff and, as a result, Plaintiff Products bearing the ONE SECOND NEEDLE AND SPIRAL EYE Marks have significant sales.

16. The ONE SECOND NEEDLE AND SPIRAL EYE Marks have never been assigned or licensed to any of the Defendants in this matter.

17. The ONE SECOND NEEDLE AND SPIRAL EYE Marks are a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

18. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the ONE SECOND NEEDLE AND SPIRAL EYE Marks.

19. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the ONE SECOND NEEDLE AND SPIRAL EYE Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

20. In or around September January 2021, Plaintiff identified the ONE SECOND NEEDLE AND SPIRAL EYE Mark on the Infringing Webstores and Counterfeit Products designed to resemble authorized retail Internet stores selling genuine ONE SECOND NEEDLE AND SPIRAL EYE Products that Defendants had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the ONE SECOND NEEDLE AND SPIRAL EYE Mark.

21. Defendants' use of the Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have manufactured, imported, distributed, offered for sale, and sold Counterfeit Products using the ONE SECOND NEEDLE AND SPIRAL EYE trademarks and continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the ONE SECOND NEEDLE AND SPIRAL EYE Marka in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet. The Counterfeit Products are not genuine ONE SECOND NEEDLE AND SPIRAL EYE Plaintiff Products. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of authentic ONE SECOND NEEDLE AND SPIRAL EYE Products through the Infringing Webstores, often by stealing and copying Plaintiff's copyrighted images and photographs of Plaintiff's genuine Products in violation of the Plaintiff copyrights. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate webstores and listings, authorized to sell genuine ONE SECOND NEEDLE AND SPIRAL EYE Plaintiff Products.

29. Defendants also deceive unknowing consumers by using the ONE SECOND NEEDLE AND SPIRAL EYE Marks without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ONE SECOND NEEDLE AND SPIRAL EYE Products and in consumer product searches within the Webstores.

30. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new Webstores on various platforms using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names

and addresses. Such registration patterns are one of many common tactics used by the

Defendants to conceal their identities and the full scope and interworking of their illegal

counterfeiting operations and to prevent the Infringing Webstores from being disabled.

31. Upon information and belief, Defendants will continue to register or acquire listings

for the purpose of selling Counterfeit Products that infringe upon the ONE SECOND NEEDLE

AND SPIRAL EYE Marks unless preliminarily and permanently enjoined.

32. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. §1114)

33. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

34. The Plaintiff's Marks and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. The Marks are highly

distinctive and has become universally associated in the public mind with Plaintiffs' Products

and related services. Consumers associate the Plaintiff's Mark with the Plaintiff as the source of

the very highest quality products.

35. Without the Plaintiff's authorization or consent, and having knowledge of the

Plaintiff's well-known and prior rights in the Plaintiff's Mark and the fact that Defendants'

Counterfeit Products are sold using marks which are identical or confusingly similar to the

Plaintiff's Mark, the Defendants have manufactured, distributed, offered for sale, and/or sold the

Counterfeit Products to the consuming public in direct competition with Plaintiff's sale of

genuine Plaintiff Products, in or affecting interstate commerce.

7

36. Defendants' use of copies or approximations of the Plaintiff's Mark in conjunction with Defendant's Counterfeit Products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with, or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

37. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. §1125(a))**

38. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's Products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

40. By misappropriating and using the Plaintiff's Marks, genuine product images, and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

41. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations

8

that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to

Defendants' profit and to the Plaintiff's great damage and injury.

42. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images, and

trade names, in connection with their goods and services in interstate commerce, constitutes a

false designation of origin and unfair competition.

43. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not

enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and

reputation.

**COUNT THREE**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS 510)**

44. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

45. The Counterfeit Products sold and offered for sale by Defendants are of the same

nature and type as the Plaintiff's Products sold and offered for sale by the Plaintiff and, as such,

Defendants' use is likely to cause confusion to the general purchasing public.

46. By misappropriating and using the Plaintiff's Mark, genuine product images, and

trade names, Defendants misrepresent and falsely describe to the general public the origin and

source of the Counterfeit Products and create a likelihood of confusion by consumers as to the

source of such merchandise.

47. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer

for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations

that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to the

Defendants' profit and to the Plaintiff's great damage and injury.

48. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS 510/2 *et seq*., in that Defendants' use of the Plaintiff's Mark, genuine

product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

49. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not

enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and

reputation.

**Prayer for Relief**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the

Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates,

and all persons in active concert with them be temporarily, preliminarily, and permanently

enjoined and restrained from:

(i) using the Plaintiff's Marks or any reproduction, counterfeit, copy, or colorable

imitation of the Plaintiff's Mark in connection with the distribution, advertising, offer for

sale, and/or sale of merchandise not the genuine products of the Plaintiff; and

(ii) passing off, inducing, or enabling others to sell or pass off any Counterfeit

Products as genuine products made and/or sold by the Plaintiff; and

10

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing the Plaintiff's Mark and damaging Plaintiff's goodwill;

(v) competing unfairly with Plaintiff in any manner;

(vi) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the ONE SECOND NEEDLE AND SPIRAL EYE Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vii) using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(viii) operating and/or hosting websites at the Infringing Webstores and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's Mark or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Mark; and

(ix) registering any additional domain names that use or incorporate any of the Plaintiff's Marks; and

11

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i) displaying images protected by the Plaintiff's Copyright in connection with the distribution, advertising, offer for sale, and/or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff's Copyright; and

(ii) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's Copyright or any reproductions, counterfeit copies, or colorable imitations thereof; and

3. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

4. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Plaintiff's Marks;

5. That Defendants' account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of

12

damages for infringement of the ONE SECOND NEEDLE AND SPIRAL EYE Mark be

increased by a sum not exceeding three times the amount thereof as provided by law as provided

by 15 U.S.C. § 1117;

6. In the alternative, that Plaintiff be awarded statutory damages of Two Hundred and

Fifty Thousand Dollars (U.S.) and No Cents ($250,000.00) for each and every use of the

Plaintiff's Mark counterfeited by each Defendant;

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8. Grant Plaintiff such other and further legal relief as may be just and proper.


Respectfully submitted,



By:      s/David Gulbransen/
       David Gulbransen
       Attorney of Record

       David Gulbransen (#6296646)
       Law Office of David Gulbransen
       805 Lake Street, Suite 172
       Oak Park, IL 60302
       (312) 361-0825 p.
       (312) 873-4377 f.
       david@gulbransenlaw.com